Robert P. Schuster
Wyoming Bar No. 4-1137
Bradley L. Booke
Wyoming Bar No. 5-1676
ROBERT P. SCHUSTER, P.C.
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
bob@bobschuster.com
brad@bobschuster.com

Marilyn R. Filkins
Wyoming Bar No. 6-3174
321 West Pine Street, Suite 102
Pinedale, Wyoming 82941
Telephone: 1.307.367.7550
mfilkins@wyoming.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 MAR -6  PM 1:47

MARGARET BOTKINS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CHARLI R. BRUCE | ) |
| | ) |
| Plaintiff, | )  Civil No. 20-CV-44-R |
| | ) |
| v. | ) |
| | ) |
| MINNESOTA LIFE INSURANCE | ) |
| COMPANY, a Foreign Insurance | ) |
| Corporation | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

For her claims for relief against the defendant, Charli R. Bruce---by and through her counsel---states and alleges as follows:

### I.  PARTIES

1. Charli R. Bruce ("Ms. Bruce") is the surviving natural daughter of Alan Ray Bruce ("Mr. Bruce"). Ms. Bruce is a citizen and resident of Uinta County, Wyoming.

2. Mr. Bruce lived in Big Piney, Wyoming until his death on September 30, 2019. He was the owner of a life insurance policy issued by Minnesota Life Insurance Company---Policy No.

2596836W ("the policy")---which provided coverage of Two Hundred and Fifty Thousand Dollars ($250,000.00). Ms. Bruce was the beneficiary of the policy.

3. Minnesota Life Insurance Company ("Minnesota Life") is a foreign insurance corporation, organized under the laws of the State of Minnesota, and has its principal place of business in Ramsey County, Minnesota. It is a subsidiary entity of Securian Financial Group, Inc., a Delaware corporation. At all times relevant hereto, Minnesota Life has transacted insurance business in the State of Wyoming pursuant to a certificate of authority issued by the Wyoming Insurance Department. Pursuant to the provisions of Section 26-3-112(a)(viii), W.S. 1977 as amended, Minnesota Life has appointed the Wyoming Insurance Commissioner as its attorney to receive service of legal process.

4. As an insurance corporation, Minnesota Life can only act through its officers, directors, employees, and agents. As the employer of those who set policy and who are involved with its business operations, Minnesota Life is liable for the acts and omissions of its officers, directors, employees, and agents.

## II.   JURISDICTION

5. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) in that there is complete diversity of citizenship between the plaintiff (who is a citizen of the State of Wyoming) and the defendant (which is a citizen of the State of Minnesota).

6. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs in conformity with the provisions of 28 U.S.C. §1332(a).

7. This Court has personal jurisdiction over the defendant by virtue of its transaction of insurance business within the State of Wyoming generally, its issuance of an insurance policy in

Wyoming to Mr. Bruce specifically, its application for and issuance of certificates of authority from the Wyoming Insurance Department, and its appointment of the Wyoming Insurance Commissioner as its attorney to receive service of legal process.

### III.   VENUE

8. Venue of this action lies in this judicial district under 28 U.S.C. § 1391(b)(2). Mr. Bruce was a resident of Wyoming when he purchased the policy as well as at the time of his death. Ms. Bruce has been a resident of Wyoming at all times relevant hereto. The policy was issued when Minnesota Life was authorized and licensed to transact insurance business within the State of Wyoming---and the authorization and licensure has persisted continuously since that time.

### IV.   FACTS COMMON TO ALL CLAIMS FOR RELIEF

9. As previously mentioned, Mr. Bruce died on September 30, 2019. While going through his deceased father's papers on December 9, 2019, Mr. Bruce's son (Hayden, age 19 and the guardian of his younger brother, a minor child) discovered documentation of a life insurance policy from Minnesota Life.

10. On that same day, Hayden Bruce called and talked with Donna Seidl, a customer benefit payments senior specialist with Minnesota Life. He emailed Ms. Seidl a copy of the death certificate and divorce decree between his father and ex-stepmother, Jennifer M. Bruce.

11. On December 11, 2019---after claiming to have investigated the documents and information in Minnesota Life's file---Ms. Seidl called Hayden and told him that Jennifer M. Bruce was the beneficiary.

12. Two weeks later---on December 27---Hayden received an email from Ms. Seidl stating that if he or his sister, Charli Bruce, were going to be submitting a competing claim they had to do so by December 31, 2019. Ms. Seidl stated that Jennifer M. Bruce had submitted a claim. At no

point in the telephone conversations or emails did Ms. Seidl inform Mr. Bruce's son that documents existed and were contained in the Minnesota Life file that established that his father had submitted change of beneficiary documents two years earlier---removing Jennifer Bruce as beneficiary and naming Charli Bruce as the beneficiary.

13. On December 27, 2019, Charli Bruce made a claim for the policy proceeds through the Securian link. On the same day, attorney Marilyn Filkins called Donna Seidl who represented that the company's Legal Department had investigated the matter and concluded that Jennifer Bruce was the beneficiary---again, never mentioning the change of beneficiary documents executed two years earlier by Mr. Bruce. Ms. Filkins told Ms. Seidl that she represented the family and was in the process of filing a probate proceeding. Ms. Seidl informed Ms. Filkins that she could not talk with her until her capacity as the attorney was established in the probate proceeding or until a personal representative was appointed.

14. The probate was filed on January 23, 2020 and the personal representative was appointed on January 28. Ms. Filkins called Ms. Seidl the day before---January 27--- and she explained that another claims examiner, Susan Bou-Rodrigues, had mailed a letter to her on January 20. The letter had not arrived. Ms. Seidl emailed it to her that day---January 27.

15. In the January 20 letter from Minnesota Life (emailed on January 27), Ms. Bou-Rodrigues made several assertions, the most important of which was that the claim file had been reviewed by "our Law Department." The letter correctly noted that Alan R. Bruce and Jennifer M. Bruce were divorced. Ms. Bou-Rodrigues' letter then stated that "it does not appear that the ex-spouse's rights to this benefit has been revoked." She then advised that---if Charli Bruce did not respond to her by February 3---the proceeds would be paid to the ex-wife. Again, no mention was made that Mr. Bruce had completed a change of beneficiary form.

16. On January 28, Ms. Filkins talked to Ms. Bou-Rodrigues and asked for a copy of the policy and any documentation that would establish the basis for a February 3 deadline. Ms. Bou-Rodrigues said it was not written down and did not have to be. They talked and Ms. Bou-Rodrigues agreed to extend the February 3 "deadline" for ten (10) days, February 14, 2020.

17. The Bou-Rodrigues letter ultimately arrived on January 29.

18. On January 29-30, 2020, the family went through Mr. Bruce's papers and discovered what Minnesota Life had willfully concealed from Hayden, Charli Bruce (to whom Minnesota Life owned clear duties of good faith and fair dealing---all of which were breached), and Ms. Filkins, the attorney representing Charli Bruce and the family.

19. On June 1, 2017---a week before the Decree of Divorce between Alan and Jennifer Bruce was filed---Mr. Bruce completed the Beneficiary Change document and change of bank account information form used by Minnesota Life. The documentation unequivocally notified Minnesota Life that Mr. Bruce had changed the beneficiary on the policy from Jennifer Bruce to his daughter, Charli Rae Bruce. The documents also changed the banking information for the electronic funds transfer. Mr. Bruce had every reason to change the beneficiary. He was divorcing Jennifer Bruce, a woman who had assaulted him on multiple occasions and was armed with a .357 Magnum revolver. On June 6, 2017, Mr. Bruce filed a Petition for Order of Protection and an *Ex Parte* Order of Protection was entered on the same day.

20. On June 12, 2017, Keith Hart from Minnesota Life wrote Mr. Bruce and said he had signed a signature line that was for the irrevocable beneficiary. In fact---the form executed by Mr. Bruce had three signature lines---one for the policy owner, one for a trustee, and one for the irrevocable beneficiary. Mr. Bruce signed all three. In regard to the irrevocable beneficiary signature line, Mr. Hart's letter said that "[i]f it not your intention to have an irrevocable beneficiary, please

eliminate that signature completely." Mr. Bruce did not eliminate that signature. Thus, it was undoubtedly Mr. Bruce's intent to have his daughter be the beneficiary forever.

21. On June 22, 2017, Andrew Magee from Minnesota Life wrote to Mr. Bruce regarding the change of banking information form, stating that he needed to provide more information by July 6, 2017 or else the company would continue to use the old banking information. Documents indicating whether Mr. Bruce provided the additional information have not been discovered by the Bruce family nor is it known to the Bruce family from which bank account Minnesota Life drew funds to pay the policy premiums---but they are facts that will be learned in discovery. What is known, however, is that regardless of whether the banking form was filled out to the "T," Minnesota Life paid itself the premiums from one of Mr. Bruce's accounts.

22. Minnesota Life's annual report speaks of its professed values. All these events involve a normal family in rural Wyoming---and a father who was trying his best to take care of his three children. That included entrusting his oldest child (Charli) with looking after the interests of her two younger brothers by making her the beneficiary of his life insurance policy, his only source of significant value. Minnesota Life's annual report speaks of its professed values. The Minnesota Life report declares that "[f]amily doesn't have to branch from your tree, but it always shares your roots. Roots woven by common understanding, shared values and mutual respect. Like you, we believe a rewarding life is really about being present in the here and now, and that money isn't the only thing when family is your everything." As it was for Mr. Bruce.

23. There are other ways in which values are protected---and in Wyoming that includes abiding by the black-letter rules and requirements of the Wyoming Insurance Commissioner and Legislature's enactments contained in Wyoming insurance statutes.

24. By virtue of the foregoing events, Minnesota Life Insurance Company has violated the most basic obligations it owes to its policy beneficiary. It is a violation of Wyoming statutes to refuse to pay policy proceeds and it is tortious misconduct to willfully conceal facts known to the insurance company---and to attempt to willfully deceive those to whom it owes significant duties.

25. The responsibilities violated by Minnesota Life---including the failure to timely pay policy proceeds, the willful deception of its policy beneficiary, the willful failure to disclose critical information to its policy beneficiary, and the willful effort to foreclose its beneficiaries rights---are mandated by statute and industry standards ("the Minnesota Life misconduct"). For example, § 26-3-116(b) permits the Insurance Commissioner to suspend or revoke an insurer's certificate of authority for failure to pay policy claims---or for the delayed payment of policy claims.

26. The Minnesota Life misconduct has been undertaken while it possesses the proceeds for its own benefit and advantage and all undertaken with the knowledge that such misconduct is to the detriment of its policy beneficiary.

27. The Minnesota Life misconduct was attended by negligent and intentional acts and omissions. But the misconduct also included acts and omissions characterized by (a) willful or wanton misconduct, (b) wanton disregard of duty, (c) gross or outrageous misconduct, and (d) acts and omissions undertaken in reckless disregard of the consequences and under circumstances and conditions that a reasonable insurance company would know, or have reason to know, that such conduct would, in a high degree of probability, result in harm to another.

28. As a consequence of the Minnesota Life misconduct, Minnesota Life is liable for punitive and exemplary damages. Punitive and exemplary damages should be assessed against Minnesota Life to deter this defendant and others similarly situated from future similar misconduct.

## V.   FIRST CLAIM FOR RELIEF:  BREACH OF INSURANCE CONTRACT

29. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30. A valid contract of insurance has existed with Minnesota Life at all times relevant hereto that specified a primary insured death benefit of $250,000.  It has been identified as Policy No. Policy No. 2596836W.  Mr. Bruce has been the owner of the policy and Charli R. Bruce is the named beneficiary.

31. Mr. Bruce died on September 30, 2019, making Minnesota Life legally obligated to pay the death benefit and accrued interest under the terms of the insurance contract.

32. Minnesota Life was notified of the death of Mr. Bruce on December 9. 2019.

33. Chari R. Bruce made her claim for the policy proceeds on December 27, 2019.

34. Minnesota Life has refused to pay the death benefit and accrued interest.

35. Minnesota Life has breached its insurance contact.

36. As a proximate result of the breach by Minnesota Life of its insurance contract, the plaintiff has been damaged.  Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

## VI.   SECOND CLAIM FOR RELIEF:  UNREASONABLE REFUSAL TO PAY--- VIOLATION OF STATUTORY DUTY

37. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 36 above as if fully set forth herein.

38. Chari R. Bruce made her claim for the policy proceeds on December 27, 2019.

39. Minnesota Life has refused to pay the full amount of the policy proceeds.

40. At all times relevant hereto, Minnesota Life had a duty under § 26-15-124, W.S. 1977 as amended (as well as by other authority), to pay the full policy proceeds for both policies.

41. The refusal to pay has been unreasonable.

42. The refusal to pay has been without proper cause.

43. Violation of the statutory duty renders Minnesota Life liable to the plaintiff for reasonable attorney fees and interest at the rate of ten percent (10%) per year.

44. As a proximate result of the violation by Minnesota Life of its statutory duties, plaintiff has been damaged. Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

### VII.   THIRD CLAIM FOR RELIEF:  BAD FAITH REFUSAL TO PAY

45. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 44 above as if fully set forth herein.

46. A valid contract of insurance has existed with Minnesota Life at all times relevant hereto. Mr. Bruce has been the owner of the policy and Ms. Bruce is the named beneficiary.

47. Mr. Bruce died on September 30, 2019, making Minnesota Life legally obligated to pay the death benefit and accrued interest under the terms of the insurance contract.

48. Minnesota Life was notified of the death of Mr. Bruce on December 9. 2019.

49. Chari R. Bruce made her claim for the policy proceeds on December 27, 2019.

50. Minnesota Life has refused to pay the death benefit and accrued interest.

51. Minnesota Life has breached its insurance contact.

52. Minnesota Life has refused to pay the death benefit and has accrued interest in bad faith.

53. Minnesota Life's failure to pay the death benefit and the accrued interest has been unreasonable. There has been an absence of a reasonable basis for withholding the benefits of the

policy. A reasonable insurer under the circumstances would not have acted as Minnesota Life did in denying or delaying payment of the claim. The validity of the claim was not fairly debatable and was established by documents in Minnesota Life's own file that it intentionally and purposefully failed to disclose to Ms. Bruce for Minnesota Life's own benefit.

54. Minnesota Life acted with knowledge of, or in reckless disregard of, the absence of a reasonable basis to deny payment of benefits.

55. As a proximate result of Minnesota Life's bad faith, plaintiff has been damaged. Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

### VIII.   FOURTH CLAIM FOR RELIEF:  BAD FAITH DELAY OF PAYMENT

56. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57. A valid contract of insurance has existed with Minnesota Life at all times relevant hereto. Mr. Bruce has been the owner of the policy and Ms. Bruce is the named beneficiary.

58. Mr. Bruce died on September 30, 2019, making Minnesota Life legally obligated to pay the death benefit and accrued interest under the terms of the insurance contract.

59. Minnesota Life was notified of the death of Mr. Bruce on December 9. 2019.

60. Chari R. Bruce made her claim for the policy proceeds on December 27, 2019.

61. Minnesota Life has refused to pay the death benefit and accrued interest.

62. Minnesota Life has breached its insurance contact.

63. Minnesota Life has refused to pay the death benefit and accrued interest in bad faith.

64. Minnesota Life's failure to pay the death benefit and the accrued interest has been unreasonable. There has been an absence of a reasonable basis for withholding the benefits of the

policy. A reasonable insurer under the circumstances would not have acted as Minnesota Life did in denying or delaying payment of the claim---and the validity of the claim was not fairly debatable.

65. Minnesota Life acted with knowledge of, or in reckless disregard of, the absence of a reasonable basis to deny payment of benefits.

66. Plaintiff has been required to file this Complaint in the United States District Court for the District of Wyoming to seek redress for the damages inflicted by Minnesota Life. That damage has occurred and is continuing. To the extent---after suit has been filed---Minnesota Life then tenders some sum of money to plaintiff, plaintiff will have still been damaged by the delay in payment and the fraud and deceit perpetrated by Minnesota Life. As a matter of public policy, insurers should be required to fully and expeditiously pay benefits under insurance policies and should not be permitted to refuse payment or to delay payment---until insureds or owners of policies are forced to bring suit under circumstances where the insurer has in bad faith, tortiously, and wantonly retained the money for its own use and benefit.

67. In refusing and delaying payment, Minnesota Life has acted without justification, intentionally, with deceit, and in violation of industry standards and customs.

68. As a matter of law and public policy, insurers have clear duties of care not to commit fraud and deceit in an effort to defeat a beneficiary's rights. Minnesota Life violated those duties---and did so without justification, intentionally, fraudulently, with deceit, and in violation of law in industry standards and customs.

69. As a proximate result of Minnesota Life's misconduct, the plaintiff has been damaged. Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

## IX.  FIFTH CLAIM FOR RELIEF:  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

70. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 69 above as if fully set forth herein.

71. A valid contract of insurance has existed with Minnesota Life at all times relevant hereto. Mr. Bruce has been the owner of the policy and Ms. Bruce is the named beneficiary.

72. Mr. Bruce died on September 30, 2019, making Minnesota Life legally obligated to pay the death benefit and accrued interest under the terms of the insurance contract.

73. Minnesota Life was notified of the death of Mr. Bruce on December 9. 2019.

74. Chari R. Bruce made her claim for the policy proceeds on December 27, 2019.

75. Minnesota Life has refused to pay the death benefit and accrued interest.

76. Minnesota Life has breached its insurance contact.

77. Minnesota Life has refused to pay the death benefit and accrued interest in bad faith.

78. Minnesota Life's failure to pay the death benefit and the accrued interest has been unreasonable.  There has been an absence of a reasonable basis for withholding the benefits of the policy.  A reasonable insurer under the circumstances would not have acted as Minnesota Life did in denying or delaying payment of the claim---and the validity of the claim was not fairly debatable.

79. Minnesota Life acted with knowledge of, or in reckless disregard of, the absence of a reasonable basis to deny payment of benefits.

80. There is implied in the insurance contract a covenant of good faith and fair dealing which which Minnesota Life breached by its misconduct as described herein.

81. Plaintiff has been required to file this Complaint in the United States District Court for the District of Wyoming to seek redress for the damages inflicted by Minnesota Life.  That damage

has occurred and is continuing. To the extent---after suit has been filed---Minnesota Life then tenders some sum of money to plaintiff, plaintiff will have still been damaged by the delay in payment and the fraud and deceit perpetrated by Minnesota Life. As a matter of public policy, insurers should be required to fully and expeditiously pay benefits under insurance policies and should not be permitted to refuse payment or to delay payment---until insureds or owners of policies are forced to bring suit under circumstances where the insurer has in bad faith, tortuously, and wantonly retained the money for its own use and benefit.

82. In refusing and delaying payment, Minnesota Life has acted without justification, intentionally, with deceit, and in violation of industry standards and customs.

83. As a matter of law and public policy, insurers have clear duties of care not to commit fraud and deceit in an effort to defeat a beneficiary's rights. Minnesota Life violated those duties---and did so without justification, intentionally, fraudulently, with deceit, and in violation of law in industry standards and customs.

84. As a proximate result of Minnesota Life's misconduct and breach of the covenant of good faith and fair dealing, the plaintiff has been damaged. Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

## X. SIXTH CLAIM FOR RELIEF: FRAUD AND DECEIT

85. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 84 above as if fully set forth herein.

86. Minnesota Life represented to the plaintiff that a material fact was true, specifically, that Jennifer Bruce was the designated beneficiary of the insurance policy.

87. Minnesota Life's representation was false.

88. Minnesota Life knew the representation was false when made as was reasonably ascertained by reviewing its own insurance policy file and documents, specifically, that Mr. Bruce had executed a change of beneficiary form designating Ms. Bruce as the beneficiary.

89. Minnesota Life intended that the plaintiff rely on the representation.

90. Plaintiff reasonably believed that Minnesota Life's representations were true until documents were discovered in Mr. Bruce's papers that demonstrated the falsity of Minnesota Life's representations and the deceit being perpetrated by Minnesota Life.

91. Ms. Bruce suffered damages relying on Minnesota Life's false representations and that damage continues through the date of this Complaint inasmuch as Minnesota Life wrongfully continues to withhold payment of the policy.

92. As a proximate result of Minnesota Life's misconduct, the plaintiff has been damaged. Accordingly, plaintiff is entitled to an award of damages against Minnesota Life in amounts as are more specifically detailed in that section of this Complaint denominated as "Damages."

## XI.   DAMAGES

93. Plaintiff hereby incorporates all statements and allegations contained in paragraphs 1 through 92 above as if fully set forth herein.

94. As a direct and proximate result of the Minnesota Life's tortious misconduct, plaintiff has been damaged, including as follows:

   a. Past and future physical pain and suffering in an amount to be proven at trial.

   b. Past and future emotional pain and suffering that has been accompanied by physical symptoms---in an amount to be proven at trial.

   c. Economic loss, including the financial loss associated with being deprived of proceeds that were rightfully due in an amount to be proven at trial.

d. Payment of the policy amount and accrued interest under the terms of Policy No. 2596836W.

e. Ten percent (10%) interest from the date Minnesota Life was informed of Mr. Bruce's death on all sums awarded to plaintiff.

f. Reasonable attorney fees.

g. Punitive and exemplary damages.

WHEREFORE, plaintiff respectfully prays that the Court enter judgment against the defendant in an amount as supported by the allegations of this Complaint, together with interest and costs, and for such other and further relief as the Court deems just and equitable.

Dated this 6th day of March, 2020.

ROBERT P. SCHUSTER, P.C.

By: *[signature]*

Robert P. Schuster
Bradley L. Booke
Robert P. Schuster, P.C.
250 Veronica Lane, Suite 204
P.O. Box 13160
Jackson, Wyoming 83002
1.307.732.7800 (Telephone)
1.307.732.7801 (Facsimile)
bob@bobschuster.com
brad@bobschuster.com

Marilyn R. Filkins
321 West Pine Street, Suite 102
Pinedale, Wyoming 82941
Telephone: 1.307.367.7550
mfilkins@wyoming.com

Attorneys for Plaintiff

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands that all issues regarding all claims for relief above be tried by a jury.

Dated this 6th day of March, 2020.

By: _____
Robert P. Schuster